**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————————

JAMES ADKINS,                 :
                                :
                                :    Civil Action No. 3:07-cv-00901 (FLW)
                                :
        Plaintiff,             :
                                :
            v.                   :
                                :             **OPINION**
BRISTOL-MYERS SQUIBB COMPANY,   :
SANOFI-AVENTIS U.S. L.L.C.,       :
SANOFI-AVENTIS U.S., INC.,        :
SANOFI-SYNTHELABO, INC.,         :
                                :
        Defendants.        :

—————————————————————————

This matter comes before the Court on a motion to dismiss pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure brought by defendants, Bristol Myers-Squibb Company, Sanofi-Aventis U.S., L.L.C., Sanofi-Aventis U.S., Inc., and Sanofi-Synthelabo, Inc., (collectively, "Defendants").   The First Amended Complaint filed by Plaintiff James Adkins asserts claims against Defendants for: (1) defective design (Count I); (2) manufacturing defect (Count II); (3) failure to warn (Count III); (4) negligence (Count IV); (5) negligent misrepresentation (Count V); (6) violations of Tennessee's Consumer Protection Act (Count VI); and (7) punitive damages (Count VII).   Plaintiff alleges that he was injured as a result of Defendants' unlawful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distributing, labeling and sale of the prescription drug Plavix®.   Defendants' motion to dismiss is limited to Count V and Count VI of Plaintiff's Complaint.   For the reasons that follow, Defendants' motion to dismiss Counts V and VI is granted.

I.      **Procedural History**

On February 26, 2007, Plaintiff, a Tennessee resident, filed a Complaint against Defendants asserting claims under the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1, *et seq.*, the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9, *et seq.*, the New Jersey Uniform Commercial Code, N.J.S.A. 12A:2-313, and the common law of the State of New Jersey, invoking this Court's diversity jurisdiction.  (Feb. 26, 2007 Complaint ¶¶ 6-8.)  Plaintiff is one of twenty-three individual claimants[1] that lodged separate complaints[2] against Defendants in this district between October 2006 and March 2007, invoking this Court's diversity jurisdiction and asserting similar claims under New Jersey law based upon injuries allegedly suffered as a result of Defendants' alleged negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distributing, labeling and/or the sale of Plavix.  Id.  A brief recitation of the procedural history in the related matters is necessary to a full understanding of the prolonged procedural history in this matter.

In January 2007, prior to the filing of the instant action, Defendants filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) in the matters of Hall v. Bristol-Myers Squibb, No. 06-CV-5203 (hereinafter, "Hall"), and Skilstaff v. Bristol-Myers Squibb, No. 06-CV-

_____

[1]      Initially, claims were filed on behalf of twenty-four individual claimants, however, a Michigan plaintiff in the matter of Felmlee v. Bristol-Myers Squibb Co., No. 06-6240, voluntarily dismissed her claim in February, 2008.

[2]      A number of the twenty-three claimants were joined in their actions by spouses, asserting claims for loss of consortium.

2

4965 (hereinafter, "Skilstaff"),[3] and indicated their intention to file similar motions in the other Plavix cases pending before this Court.  In March 2007, this Court, without objection from the parties, administratively terminated Defendants' motions in Hall and Skilstaff having determined that two cases then pending before the New Jersey Supreme Court addressed the central issues to be decided by this Court on Defendants' motions to dismiss. The parties further agreed that all Plavix cases filed in this district be held in abeyance. Following the issuance of the New Jersey Supreme Court's decisions in Rowe v. Hoffman-LaRoche, 189 N.J. 615 (2007), and International Union of Operating Engineers, Local #68 v. Merck, 192 N.J. 372 (2007), the plaintiff in Skilstaff voluntarily dismissed the action and this Court granted Defendants' request to file a single omnibus motion to dismiss applicable to all personal injury Plavix lawsuits then pending in this district.

One of the main issues to be determined by this Court in the omnibus motion was the federal preemption of the plaintiffs' individual state law claims.  In February 2008, however, in light of the fact that the Third Circuit had pending two separate cases, Colacicco v. Apotex, Inc., and McNellis ex rel. DeAngelis v. Pfizer, Inc., on its docket regarding substantially similar preemption issues, as did the United States Supreme Court, Levine v. Wyeth, this Court administratively terminated the personal injury Plavix cases pending in this district and permitted plaintiffs to re-file amended complaints in the event there were viable claims after the decisions from the Higher Courts.  Following the issuance of the Supreme Court's decision in Levine v. Wyeth, __ U.S. __, 129 S.Ct. 1187,

---

[3]   The plaintiff in the matter of Skilstaff v. Bristol-Myers Squibb, is not among the twenty-three individual claimants seeking damages for personal injuries, rather Skilstaff was an Alabama third-party payor seeking certification of a class of third-party payors for violations of the New Jersey Consumer Fraud Act.

3

173 L.Ed. 2d 51 (2009), this Court reinstated the closed cases and, on May 1, 2009, each of

the plaintiffs filed an amended complaint.  In the amended complaints, each individual

plaintiff brought claims under the laws of the states in which they reside, rather than New

Jersey, as originally plead.  Thereafter, Defendants moved to dismiss certain counts of the

amended complaint filed by each individual plaintiff.  It is the Defendants' motion to

dismiss Counts V and VI with regard to this Plaintiff that this Court now considers.

## II.    Factual Background

The following version of events assumes Plaintiff's allegations in the First Amended

Complaint ("FAC") to be true because Defendants move pursuant to Fed. Civ. R. P.

12(b)(6).  The Court will recount only those facts relevant to this Motion.

Sanofi-Aventis U.S., L.L.C., Sanofi-Aventis U.S., Inc., and Sanofi-Synthelabo, Inc.

(collectively, the "Sanofi Defendants") partnered with Bristol-Myers Squibb Company

("BMS") to manufacture and market Plavix in the United States.  FAC ¶¶ 2-5.  In April

1997, the Sanofi Defendants and BMS applied for a rare, priority regulatory review by the

Food and Drug Administration ("FDA") clearing the way for Defendants to bring Plavix to

market in November 1997.  Id. at ¶ 12.  According to Plaintiff, Defendants heavily

marketed Plavix directly to consumers through television, magazine, and Internet

advertising, falsely touting Plavix "as a 'super-aspirin' that would give a person even

greater cardiovascular benefits than a much less expensive, daily aspirin, while being safer

and easier on a person's stomach than aspirin."  Id. at ¶ 14.  Plaintiff alleges that

Defendants either knew or should have known, based upon their own studies, that not only

was Plavix not more efficacious than aspirin in terms of preventing heart attacks and

strokes, the risk of suffering a heart attack, stroke, internal bleeding, blood disorder or

4

death far outweighed any benefit from the drug.  Id. at ¶ 15.

As evidence that Defendants were indeed aware of their false and misleading promotion of Plavix, Plaintiff points to a November 1998 letter from the FDA wherein the FDA instructed Defendants to cease promoting Plavix for off-label use in patients undergoing coronary artery stent placement.[4]  Id. at ¶ 19; Certification of Michele A. DiMartino, Esq. ("DiMartino Cert.") at ¶ 4, Ex. C.  Plaintiff also points to the same FDA reprimand wherein Defendants were instructed to cease promoting Plavix at an off-label dose, which was nearly four (4) times that of the recommended dosage.  FAC at ¶ 19; DiMartino Cert. ¶ 4, Ex. C.  In addition to criticizing Defendants for promoting Plavix for unapproved use, the FDA also criticized Defendants for overstating the safety profile of Plavix with respect to its use with other drugs.  Id. at ¶ 20.  In particular, Plaintiff points to the fact that Defendants touted the safety of Plavix when combined with aspirin (known as "dual therapy") when, in fact, its safety had not been established.  Id.  According to Plaintiff, Defendants' claim regarding the safety of dual therapy has now been proven to be untrue in a recent study published in the New England Journal of Medicine in April  2006 entitled Clopidogrel for High Atherothrombotic Risk and Ischemic Stabilization, Management, and Avoidance (the "CHARISMA Study"[5]).  FAC at ¶ 20; DiMartino Cert. at ¶ 3, Ex. B.

As further evidence of Defendants' allegedly false and misleading promotional practices, Plaintiff points to a December 1998 letter from the FDA, wherein the FDA

---

[4]      As discussed more fully infra, the Court will consider the extrinsic documents referenced in the FAC as they were explicitly relied upon by Plaintiff in the FAC.

[5]      The CHARISMA Study derives its name from the Clopidogrel for High Atherothrombotic Risk and Ischemic Stabilization, Management, and Avoidance trial, which was the subject of the article.

demanded that Defendants cease the distribution of advertising materials that claimed that Plavix has been proven more effective than aspirin.  FAC at ¶ 21; DiMartino Cert. at ¶ 2, Ex. A.  The FDA criticized Defendants' materials as an overstatement of efficacy, which was unsubstantiated and lacking in fair balance.  Id.  Again in 2001, the FDA ordered Defendants to immediately cease distribution of promotional material that made false or misleading claims about Plavix.  FAC at ¶ 22; DiMartino Cert. at ¶ 5, Ex. D.  Specifically, the FDA noted that the clinical evidence of the efficacy of Plavix is derived from Defendants' study entitled Clopidogrel versus Aspirin in Patients at Risk of Ischemic Events Trial (the "CAPRIE Study").  Id.  Defendants' promotional material depicted a 19.2% relative risk reduction for Plavix versus aspirin, yet the actual findings of the CAPRIE Study were that Plavix was not proven to be significantly more effective than aspirin.  Id.  Additionally, the FDA again instructed Defendants to cease claiming that the use of Plavix combined with aspirin was safe and effective.  Id.

According to Plaintiff, in addition to misinforming physicians and consumers through false and misleading promotional materials and advertising, Defendants' drug representatives also misinformed physicians regarding the proper types of patients who should be prescribed Plavix, the duration of its proper usage and the applications for which Plavix is safe and FDA approved.  FAC at ¶ 23.  Specifically, Plaintiff points to the fact that the drug representatives have encouraged physicians to prescribe Plavix to a broad population who would receive the same therapeutic benefit from aspirin alone, without the purported risk of death, and to use Plavix for unapproved applications.  Id. at ¶ 24.

Plaintiff alleges that after a nearly eight-year run of misleading physicians and the public regarding the safety and efficacy of Plavix, scientific studies now reveal that Plavix

6

is in fact dangerous.  Id. at ¶ 26.  Citing a study published in The New England Journal of Medicine in January 2005 entitled Clopidogrel versus Aspirin and Esomeprazole to Prevent Recurrent Ulcer Bleeding (the "Chan Study"), Plaintiff notes the dangers of Plavix.  Specifically, Plaintiff contends that the Chan Study demonstrates the fallacy of Defendants' assertions that Plavix is safer and more effective for patients suffering from gastrointestinal intolerance to aspirin.  Id. at ¶ 27.  Plaintiff points out that the Chan Study recommended that prescribing guidelines for Plavix be changed so that patients would not erroneously believe that Plavix is safer on the stomach than aspirin, in light of the Study's findings that recurring stomach bleeding was 8.6% in the Plavix group versus only .7% in the aspirin group.  Id.  Plaintiff additionally points to the Chan Study's finding that an aspirin a day plus esomeprazole (the generic name for an inexpensive over-the-counter proton pump inhibitor such as Prilosec) is far more cost effective than paying for the four-dollar per day Plavix pill, which greatly increases the risk of stomach bleeding.  Id. at ¶ 28.  Finally, citing the CHARISMA Study, Plaintiff contends that Plavix plus aspirin ("dual therapy") is only minimally more effective than aspirin plus placebo at preventing atherothrombotic events, and more significantly, does more harm than good in those patients without peripheral arterial disease or acute coronary syndrome in that it poses a 20% increased risk to the patient of suffering bleeding injuries, heart attacks, stroke and death.  Id. at ¶ 29.

Plaintiff contends that he "was prescribed Plavix, to be taken in combination with aspirin (known as "dual therapy") on or about May 19, 1999 in connection with stent placement.  On or around June 18, 1999 he suffered a subdural hematoma.  A craniotomy evacuated the blood requiring an extended hospital stay.  He continues to have health

problems as a result of taking Plavix." FAC at ¶ 31. With regard to his own experiences, or those of his prescribing physician, in connection with Defendants' purported false and misleading promotional materials and practices, Plaintiff's limited discussion of those facts will be discussed more fully infra.

## III.   Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 561 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 555. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating … a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In affirming that <u>Twombly</u> standards apply to all motions to dismiss, the Supreme Court recently explained the principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009).[6]  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Id.</u> at 1950.  Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the  assumption of truth." <u>Id.</u> Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." <u>Fowler</u>, 578 F.3d at 211.

Before reaching the merits of Plaintiff's claims, there is a threshold procedural question as to the documents and exhibits this Court may consider on this motion to dismiss pursuant to <u>Fed.R.Civ.P.</u> 12(b)(6).  As previously referenced in this Court's discussion of the Factual Background, Plaintiff supplies this Court with several exhibits, including: (1) a December 1998 FDA letter addressed to Sanofi Pharmaceuticals, Inc.; (2) a copy of the CHARISMA Study; (3) a November 1998 FDA letter addressed to Sanofi Pharmaceuticals, Inc.; (4) a May 2001 FDA letter addressed to Sanofi-Synthelabo Inc.; and (5) the Chan Study.  Additionally, the Defendants provide the Court with the November 17, 1997 approval letter for Plavix.  Certification of Michael A. Tanenbaum, Esq., Ex. A.  While generally a court may not consider matters outside the pleadings when ruling on a motion

---

[6]     The Court notes that because the briefing in this matter was filed only shortly after the United States Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), counsel for Defendants moved for leave to file supplemental briefing addressing the standard of review applicable to the instant motion.  This Court found additional briefing unnecessary and, accordingly, denied Defendants' request.

to dismiss, documents that are "integral to or explicitly relied upon in the complaint" may indeed be considered without converting a motion to dismiss into a motion for summary judgment.  In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir.1999) (emphasis and citations omitted).   Accordingly, the referenced exhibits are properly before the Court on the instant motion to dismiss.

## IV.   Plaintiff's Claim Under the Tennessee Consumer Protection Act

In Count VI of Plaintiff's FAC, Plaintiff asserts violations of Tennessee's Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 *et seq*.  Defendants seek dismissal of Plaintiff's TCPA claim on the grounds that it lacks the particularity required by Fed.R.Civ.P. 9(b).

"The TCPA protects consumers and business enterprises from unfair or deceptive trade practices."  Agfa Photo United States Corp. v. Parham, No. 1:06-CV-216, 2007 U.S. Dist. LEXIS 40980, at *31 (E.D.Tenn. June 5, 2007).  "To establish a prima facie cause of action under the Tennessee Consumer Protection Act (TCPA), Tenn.Code Ann. §§ 47-18-101 to 128, Plaintiff must prove that Defendants engaged in an act or practice that is unfair or deceptive as defined under the TCPA, and that Plaintiff suffered a loss of money, property, or a thing of value as a result of the unfair or deceptive act of defendant. Tenn.Code Ann. § 47-18-109."   McKee Foods Corp. v. Pitney Bowes, Inc., No. 1:06-CV-80, 2007 WL 896153, *5 (E.D.Tenn. Mar. 22, 2007).  Claims brought under the TCPA are subject to the particularity requirements of Rule 9(b).  Id.

In Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007), the Third Circuit elucidated what must be alleged to satisfy the heightened pleading standard of Rule 9(b):

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the

> "precise misconduct with which [it is] charged." To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

Id. at 200 (internal citations omitted). The Court finds the FAC woefully deficient. As Defendants indicate, Paragraph 31 of the FAC is the only paragraph in the entire FAC that provides specific details regarding Plaintiff and not one of those details concerns the TCPA claim.[7] The remaining factual allegations are boilerplate allegations that, as Defendants point out, appear in all twenty-three of the amended complaints filed by the personal injury Plavix plaintiffs in this district. The allegations within Count VI of the FAC do not remedy the deficiency. The allegations amount to nothing more than a mechanical recitation of the elements of a cause of action under the TCPA. Indeed, there is absolutely no plaintiff-specific information identified in Count VI other than the boilerplate language tracking the elements of the cause of action.

The facts necessary to satisfy Rule 9(b) are not facts which are in Defendants' control. Rather, what Plaintiff has failed to allege are those facts that demonstrate that either Plaintiff or his prescribing physician relied upon any of the purported misrepresentations and/or omissions.[8] Plaintiff identifies Paragraphs 90 through 107 of

---

[7]     As previously noted, Paragraph 31 provides: "Plaintiff James Adkins was prescribed Plavix, to be taken in combination with aspirin (known as "dual therapy") on or about May 19, 1999 in connection with stent placement. On or around June 18, 1999 he suffered a subdural hematoma. A craniotomy evacuated the blood requiring an extended hospital stay. He continues to have health problems as a result of taking Plavix." FAC at ¶ 31.

[8]     Indeed, in that connection, Plaintiff is uniquely equipped to determine from his prescribing physician, whether the physician received such promotional literature or information from Defendants' sales representatives. Even where factual information may be within the domain or control of Defendants, Plaintiff must still "accompany [his] legal theory with factual allegations that make [his] theoretically viable claim plausible." In re

the FAC as supportive of his contention that his allegations have been plead with sufficient particularity.  As noted, however, the allegations in Count VI are nothing more than a formulaic recitation of the elements of the claim.  Clearly Plaintiff has failed to satisfy the particularity requirements with respect to causation.  While reliance upon a misrepresentation is not an element of a TCPA violation, to recover damages, a plaintiff must demonstrate that the loss suffered is the result of the deceptive act or practice.  Bradley v. All American Classics of Tennessee, Inc., No. M2008-1738, 2009 WL 1034797, at *6 (Tenn.Ct.App. Apr. 16, 2009).  In short, a plaintiff must still demonstrate that the defendant proximately caused his injuries.  Id.  Even assuming that Plaintiff has identified sufficiently specific facts regarding the purported deceptive conduct, Plaintiff has failed to identify which misinformation reached Plaintiff or his prescribing physician and when the misrepresentations were received by Plaintiff and his physician.  Without this information, Plaintiff's allegations not only fail to satisfy the requirements of Rule 9(b), they amount to mere legal conclusion that does not state a plausible claim upon which relief can be granted.  See Iqbal, 129 S.Ct. At 1949.  Accordingly, Plaintiff's TCPA claim cannot withstand the instant motion to dismiss.[9]

---

Burlington Coat Factory, 114 F.3d 1410, 1418 (3d Cir. 1997).  Moreover, to "avoid dismissal," a complaint must also delineate at least the nature and the scope of a plaintiff's efforts to obtain, before filing the complaint, the information needed to plead with particularity.  Shapiro v. UJB Financial Corp., 964 F.2d 272, 285 (3d Cir. 1992).  Plaintiff has failed to comply with these requirements.  Plaintiff's FAC makes no allegations that the information required for Plaintiff to meet his Rule 9(b) obligation is solely within Defendants' control.

[9]     Defendants also sought dismissal of Plaintiff's punitive damages claim to the extent it sought punitive damages under the TCPA.  In light of this Court's dismissal of Plaintiff's TCPA claim, this Court need not address the issue, however, the Court notes that Plaintiff has agreed to waive his punitive damage claim under the TCPA.

**V.     Plaintiff's Negligent Misrepresentation Claim**

In Tennessee, courts look to the Restatement (Second) of Torts (1977), to define the

contours of a claim for negligent misrepresentation.

> Tennessee has adopted the definition of negligent misrepresentation
> that appears in section 552 of the Restatement (Second) of Torts.
> <u>Robinson v. Omer</u>, 952 S.W.2d 423, 427 (Tenn. 1997).  Pursuant to this
> definition, the plaintiff can recover by establishing that:
>
> > (1) the defendant is acting in the course of his business, profession,
> > or employment, or in a transaction in which he has a pecuniary (as
> > opposed to gratuitous) interest; and
> >
> > (2) the defendant supplies faulty information meant to guide others
> > in their business transactions; and
> >
> > (3) the defendant fails to exercise reasonable care in obtaining or
> > communicating the information; and
> >
> > (4) the plaintiff justifiably relies upon the information.

<u>Willingham v. Novastar Mortgage, Inc.</u>, No. 04-CV-2391, 2006 U.S. Dist. Lexis 97149, * 94-

95 (W.D.Tenn. Feb. 7, 2006).

In their moving brief, Defendants assert that Plaintiff's negligent misrepresentation

claim should be dismissed pursuant to <u>Fed.R.Civ.P.</u> 12(b) because Plaintiff has failed to

plead sufficient facts to support his claim.  In their reply brief, however, Defendants

additionally contend that Plaintiff's negligent misrepresentation claim requires dismissal

because (i) it lacks the particularity required by Rule 9(b); (ii) the Restatement (Second) of

Torts (1977) § 552, upon which Plaintiff's claim is based, is inapplicable here where

Defendants are not in the business of supplying information and Plaintiff has failed to

allege facts suggesting that the purported misrepresentation was utilized for guidance in a

business transaction; and (iii) even if § 552 is applicable, and Defendants may be deemed suppliers of information for the purposes of the claim, the learned intermediary doctrine bars the claim.  Rep. Br. at 9-12.[10]

The Court turns first to Defendants' contention that Plaintiff is unable to satisfy the elements of § 552 because Defendants are not in the business of supplying information.  In Ritter v. Custom Chemicides, Inc., 912 S.W.2d 128, 131 (Tenn. 1995), the Supreme Court of Tennessee expressly held that § 552 "does not limit to professionals liability for economic loss based on negligence in supplying false information for the guidance of others." Accordingly, this Court is unpersuaded by the case law cited by Defendants from other jurisdictions as supportive of their position.  Additionally, this court rejects Defendants' contention that dismissal is warranted because Plaintiff has failed to plead any facts to suggest that the alleged misrepresentation was utilized by Plaintiff for guidance in a business transaction.   This Court finds no support in the case law cited by Defendants for their narrow reading of § 552.  Indeed, Robinson v. Omer, 952 S.W.2d 423, 424 (Tenn. 1997) did not involve a consumer transaction.  The dismissal of the negligent misrepresentation claim in Robinson was premised on the fact that the information supplied was of a personal nature.  Id.   Moreover, Shelby v. Delta, 842 F.Supp. 999, 1015 (M.D.Tenn. 1993), where the relationship between plaintiff and defendant was that of employee/employer, clearly has no bearing here.  Ingram v. Cendant Mobility Fin.Corp., 215 S.W.3d 367, 371 (Tenn.Ct.App. 2006) likewise has no applicability as summary judgment was granted as to the negligent misrepresentation claim based upon the fact that

---

[10]     Despite the fact that Defendants failed to raise these issues in their initial briefing, the Court will nevertheless address the merits of the arguments.

14

the plaintiff had released defendant from responsibility for the alleged inaccuracies.   Were Plaintiff's negligent misrepresentation claim not deficient on other grounds, the Court would find the facts generally plead in connection with the consumer transaction sufficient to satisfy the elements of the claim.

Finally, the Court rejects Defendants' suggestion that the learned intermediary doctrine operates here to bar Plaintiff's negligent misrepresentation claim.  Defendants cite Pittman v. Upjohn Co., 890 S.W.2d 425 (Tenn. 1994) in support of their contention that Tennessee courts have adopted the learned intermediary doctrine, arguing that to the extent that they had a duty it ran to Plaintiff's prescribing physician and not to Plaintiff. Therefore, Defendants argue, the negligent misrepresentation claim must be dismissed. What Defendants fail to discuss, however, is the limitation that applies to the doctrine under Tennessee law.  In Pittman, the court held:

> physicians can be learned intermediaries only when they have received adequate warnings.  Amore v. G.D. Searle & Co., 748 F.Supp. 845, 850 (S.D.Fla. 1990).  Thus, the learned intermediary doctrine does not shield a drug manufacturer from liability for inadequate warnings to the physician.  Tracy v. Merrell Dow Pharmaceuticals, Inc., 58 Ohio St.3d 147, 569 N.E.2d 875, 878 (1991).
>
> Warnings concerning prescription drugs generally are adequate when they contain a full and complete disclosure of the potential adverse reactions to the drug.  A reasonable warning not only conveys a fair indication of the dangers involved, but also warns with the degree of intensity required by the nature of the risk.  Seley v. G.D. Searle & Co., 67 Ohio St.2d 192, 423 N.E.2d 831, 837 (1981).

Pittman, 890 S.W.2d at 429.  In light of Plaintiff's allegations regarding Defendants' purported misrepresentations in connection with Plavix, the Court fails to see how a motion to dismiss could be granted based upon application of the learned intermediary doctrine, particularly when the issue of the adequacy of the warning is generally a question

15

for the jury.  Id.

The analysis with respect to Plaintiff's negligent misrepresentation claim does not, however, end here as Plaintiff has nevertheless failed to satisfy the pleading requirements. Plaintiff does not dispute the applicability of Rule 9(b) to his negligent misrepresentation claim.  As previously noted, the Third Circuit elucidated in Frederico v. Home Depot, 507 F.3d 188, what must be alleged to satisfy the heightened pleading standard of Rule 9(b). To satisfy the particularity requirements, a plaintiff "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  Id. at 200.  Plaintiff contends that the FAC "clearly details: (1) Defendants, in their course of business supplied information (Plaintiff's Complaint at ¶¶19-22; 27; 29-30; and 79); (2) This information was supplied to Plaintiff and/or his agents (Plaintiff's Complaint at ¶¶19-22; 27; 29-30; 80; 81; and 83-85; and (3) Defendants failed to exercise reasonable care or competence in obtaining or communicating the information.  (Plaintiff's Complaint at ¶¶19-22; 27; 29-30; and 79-89)."  Pl. Br. at 8. Plaintiff further contends that the particularity requirements of Rule 9(b) have been met as the Complaint sufficiently details the who, what, when, where, and why requirements. The Court disagrees.

The FAC lacks any allegations regarding which misrepresentations were made to Plaintiff or his prescribing physician, and what misrepresentation Plaintiff relied upon in connection with his decision to take Plavix.  Without this information, Plaintiff's allegation in Paragraph 85(d) of the FAC that "Plaintiff and his healthcare provider justifiably relied on Defendants' misrepresentations" amounts to mere legal conclusion that does not state a plausible claim upon which relief may be granted.  Accordingly, Plaintiff's negligent

16

misrepresentation claim cannot withstand the instant motion to dismiss.

**VI.    Conclusion**

For the foregoing reasons, Defendants' motion to dismiss Counts V and VI of Plaintiff's FAC is granted and Plaintiff's TCPA and negligent misrepresentation claims are dismissed without prejudice.  Plaintiff shall have leave to file a motion to amend the FAC if he seeks to assert such claims, but he must cure the deficiencies as outlined by the Court.

Dated: December 30, 2009

                                          \_\_/s/ Freda L. Wolfson_____
                                          United States District Judge